HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECURIAN LIFE INSURANCE
COMPANY,

    Plaintiff,

v.

EDWARD REDDECK, an individual;
DARLENE CRAIG, an individual; and
FRITZ DERHEIM AND BETH
DERHEIM, individually and the marital
community thereof,

    Defendants.

Case No. 2:18-cv-00023-RAJ

**ORDER GRANTING DEFENDANT DERHEIM'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT REDDECK'S MOTION TO DISMISS**

## I. INTRODUCTION

This matter is before the Court on Defendants Fritz and Beth Derheim's motion for summary judgment. Dkt. #34. The Court has also considered Defendant Edward Reddeck's motion to dismiss. Dkt. # 39. For the reasons below, the Court **GRANTS** the motion for summary judgment and **DENIES** the motion to dismiss.

ORDER – 1

## II. BACKGROUND

On August 18, 2016, Patrick Reddeck called 911 to report that he had found his partner of over nine years, Amy Derheim, in the bathtub unconscious of her home. Dkt. # 36, ¶ 2. Once Kent Fire and Aid arrived, they determined that Derheim had died prior to the 911 call and that there were no obvious signs of foul play. *Id.*, ¶ 3. The cause of death was later found to be Ketamine intoxication with asphyxia due to drowning. *Id.*, ¶ 4. No other drugs or alcohol were found in her system. Dkt. # 35-2. Because of the manner and circumstances of Derheim's death were unclear, the medical examiner referred the case to the Kent Police Department (hereinafter, the "Kent Police" or "police department"). Dkt. # 36, ¶ 4.

In turning over information about Derheim, the medical examiner relayed that members of Derheim family reported that money had been taken out of Amy's bank loan account. *Id.*, ¶ 5. The Kent Police eventually developed probable cause for the crime of theft in the first degree for funds stolen from Derheim's Boeing Employee's Credit Union (BECU) Home Equity Loan Account. *Id.* During the investigation, the Kent Police discovered that Derheim had confronted Reddeck about missing money a few months prior to her death. Some of the evidence suggested that Derheim recognized a pattern of withdrawals from her account that lined up with deposits into Reddeck's bank account. Dkt. # 35-2. When she discovered Reddeck's online job was a scam, Derheim gave him an ultimatum to get a job by the end of summer 2016, or else she would ask him to move out of her house. *Id.*

After a search warrant was granted to search Derheim's and Reddeck's BECU accounts, information from BECU showed that, on the day of Derheim's death, an online transfer occurred from her account to Reddeck's account in the amount of $10,011.74. Dkt. # 36, ¶ 5. The transaction occurred approximately four hours before Reddeck called 911 to report the discovery of Derheim in the bathtub. Dkt. # 36, ¶ 5. The BECU records also showed that Reddeck withdrew $8,000.00 from his BECU account on September 12,

ORDER – 2

2016. *Id.* Kent Police interviewed Reddeck on October 11, 2016, during which he denied ever having access to Derheim's bank account. *Id.* Reddeck claimed that someone had hacked his computer causing funds to be transferred from Derheim's account to his account. *Id.* However, there was ATV video surveillance of Reddeck making the withdrawal. *Id.*

The police also obtained access to Derheim's life insurance policy, which had been issued through Securian Life Insurance Company (the "Policy"). The investigation uncovered that the Policy had been accessed electronically on August 18, 2016 at 9:24 a.m, approximately two hours after Reddeck had called 911. *Id.*, ¶8. Securian Life Insurance Company confirmed that the access to the Policy was gained through the use of Derheim's user name and password. *Id.* The evidence also showed that the policy was accessed through a fake IP address twice on July 2, 2016 before it was accessed again on August 18, 2016. *Id.* A recorded phone call to Securian by Reddeck occurred on August 26, 2016, where he inquired about the Policy and whether there were any exclusions. *Id.* Further evidence from the investigation showed activity to Derheim's beneficiary page for her basic life insurance, supplemental life insurance, and accidental death and dismemberment insurance in September 2016. Dkt. # 35-2.

Evidence taken from Reddeck's computer showed internet searches regarding the use of Ketamine had occurred on August 6, 2016, 12 days before Derheim's death. Dkt. # 36, ¶ 9. Additional searches on Mr. Reddeck's computer had occurred on October 9, 2016, regarding Ketamine. *Id.* The investigation caused the Kent Police to determine that there was probable cause to believe Reddeck had committed murder by obtaining and administering Ketamine to Derheim, leading her to drown in the bathtub. *Id.* It was believed that the motive for the murder was to collect on Derheim's life insurance as the primary beneficiary. *Id*. On October 12, 2016, officers executed a search warrant for Reddeck's residence and observed a handgun in his possession as they entered. *Id.*, ¶7. He refused to drop the gun and was shot multiple times and killed. *Id.*

ORDER – 3

Securian Life Insurance Company ("Securian") brought an interpleader action in this Court regarding Derheim's death benefit under the Policy. Dkt. # 1. Patrick Reddeck was listed as the beneficiary of the Policy upon Derheim's death. *Id.*, ¶ 11. Beth Derheim was listed as the contingent beneficiary of the Policy proceeds in the event of Amy's death. *Id.*, ¶ 13. Her parents (the "Derheim Family") have asserted a claim to the life insurance proceeds, asserting that the named beneficiary, Reddeck, should be treated as having predeceased the Insured, based on the "slayer statute," RCW 11.84.100. *Id.* Mr. Reddeck's father, Edward Reddeck (the "Reddeck Family") has asserted a competing claim to the Policy proceeds, asserting that as the named beneficiary, Patrick Reddeck, now deceased, was entitled to the life insurance proceeds and accordingly, such proceeds should be paid to him and Darlene Craig as the sole heirs of Patrick Reddeck. *Id.*, ¶ 14.

On July 23, 2018, the Derheim Family filed a motion for summary judgment. Dkt. # 34. On August 15, 2019, the Reddeck Family filed a one-page motion to dismiss alleging a lack of jurisdiction, fraud on the Court, obstruction of justice, and perjury.[1] Dkt. # 39.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's

---

[1] The Court has jurisdiction based on 28 U.S.C. §1332 as well as 28 U.S.C. §1331 and 29 U.S.C. §1132(e). Because none of the other claims have merit, the motion to dismiss is **DENIED**.

ORDER – 4

case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV. DISCUSSION

RCW 11.84.020 states that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent." For purposes of the distribution of the estate, a person determined to be a slayer is deemed to have predeceased the decedent. RCW 11.84.030. A slayer is defined as "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful killing of any other person." RCW 11.84.010(1) (emphasis added). A party seeking to bar another from benefiting under the slayer statute must demonstrate by a preponderance of the evidence that the opposing party committed a willful and unlawful homicide regardless of the outcome of any criminal proceeding. *In re Estate of Kissinger*, 206 P.3d 665 (2009); *Leavy,*

ORDER – 5

*Taber, Schultz & Bergdahl v. Metro. Life Ins. Co.*, 581 P.2d 167 (1978).

The Court finds that the Derheim Family has met the requisite standard as a matter of law.[2] It is undisputed that evidence shows Reddeck acted with premediated intent in the unlawful killing of Derheim. The police department's investigations into Reddeck's computer showed internet searches regarding the use of Ketamine on August 6, 2016, just 12 days before her death from Ketamine intoxication with asphyxia. Dkt. # 36, ¶ 9. The evidence further illustrates a motive supported by the evidence to collect funds from Derheim's bank account and life insurance policy as the primary beneficiary. On the day of Derheim's death, an online transfer occurred from her account to Reddeck's account in the amount of $ 10,011.74. Dkt. # 36, ¶ 5. The transaction occurred approximately four hours before Reddeck called 911 to report finding Derheim in the bathtub unconscious. Dkt. # 36, ¶ 5. The investigation also uncovered that the Securian life insurance policy had been accessed electronically approximately two hours after Reddeck had called 911 and that he called Securian eight days later regarding any exclusions to the Policy. *Id.*, ¶ 8. Accordingly, the Court finds as a matter of law that Reddeck is a "slayer" under RCW 11.84.030.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for summary judgment and **DENIES** the motion to dismiss. Dkt. ## 34, 39.

The clerk is ordered and directed to draw a check(s) on the funds deposited in the registry of this court in the principal amount of $312,990.66 plus all accrued interest, minus any statutory users fees, payable to Northcraft Bigby PC on behalf of the Derheim Family

---

[2] The Reddeck Family has failed to oppose the motion. However, in considering a motion for summary judgment, the motion will not be granted simply because there is no opposition. *See Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir.1993). Rather, the moving party must still demonstrate the absence of genuine issues of material fact, regardless of whether the party against whom the motion for summary judgment is directed has filed any opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994).

ORDER – 6

and mail or deliver the check(s) to Northcraft Bigby PC on behalf of the Derheim Family.

DATED this 20th day of September, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 7